AUSA: Benjamin M. Burkett

# 24 MAG 1094

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MUSA DEMAJ and<br>AMIJET KURTISHI,<br><br>Defendants. | **SEALED COMPLAINT**<br><br>Violations of 15 U.S.C. § 645;<br>18 U.S.C. §§ 1343, 1349, and 2<br><br>COUNTY OF OFFENSE:<br>BRONX |

SOUTHERN DISTRICT OF NEW YORK, ss.:

NICK SULZER, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation (the "FBI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

1. From at least in or about May 2020 through at least in or about January 2022, in the Southern District of New York and elsewhere, MUSA DEMAJ and AMIJET KURTISHI, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

2. It was a part and an object of the conspiracy that MUSA DEMAJ and AMIJET KURTISHI, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, DEMAJ and KURTISHI agreed to participate and participated in a scheme that involved, among other things, submitting over the internet loan applications containing materially false statements to the United States Small Business Administration (the "SBA") through the SBA's Economic Injury Disaster Loan ("EIDL") Program; receiving by interstate wire transfer, to and from the Southern District of New York and elsewhere, loan proceeds through the EIDL program pursuant to SBA loan agreements; and using the loan proceeds in a manner inconsistent with the applicable SBA loan agreements.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Wire Fraud)

3.     In or about October 2020, in the Southern District of New York and elsewhere, MUSA DEMAJ, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, DEMAJ engaged in a scheme to fraudulently obtain funds from the SBA through the SBA's EIDL program, and, in furtherance of that scheme, used the internet to submit a false and fraudulent loan application on behalf of Luna Pizza Inc. ("Luna Pizza"); caused Luna Pizza to receive, via interstate wire transfer to and from the Southern District of New York and elsewhere, loan proceeds through the EIDL program pursuant to an SBA loan agreement; and used the loan proceeds in a manner inconsistent with the applicable SBA loan agreement.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
### (Wire Fraud)

4.     In or about December 2020, in the Southern District of New York and elsewhere, MUSA DEMAJ, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, DEMAJ engaged in a scheme to fraudulently obtain funds from the SBA through the SBA's EIDL program, and, in furtherance of that scheme, used the internet to submit a false and fraudulent loan application on behalf of Altolisi G.C. Corp ("Altolisi Corp."); caused Altolisi Corp. to receive, via interstate wire transfer to and from the Southern District of New York and elsewhere, loan proceeds through the EIDL program pursuant to an SBA loan agreement; and used the loan proceeds in a manner inconsistent with the applicable SBA loan agreement.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOUR
### (Making False Statements to the SBA)

5.     In or about October 2020, in the Southern District of New York and elsewhere, MUSA DEMAJ, the defendant, knowingly made a false statement, knowing such statement to be false, for the purpose of obtaining for himself and for any applicant a loan, and extension thereof by renewal, deferment of action, and otherwise, and the acceptance, release, and substitution of security therefor, and for the purpose of influencing in any way the action of the SBA, and for the purpose of obtaining money, property, and anything of value, under Chapter 14A of Title 15 of

the United States Code, to wit, DEMAJ made false statements regarding his criminal history and Luna Pizza's costs of goods sold and gross revenues to the SBA in an EIDL application.

(Title 15, United States Code, Section 645(a);
and Title 18, United States Code, Section 2.)

### COUNT FIVE
### (Making False Statements to the SBA)

6. In or about December 2020, in the Southern District of New York and elsewhere, MUSA DEMAJ, the defendant, knowingly made a false statement, knowing such statement to be false, for the purpose of obtaining for himself and for any applicant a loan, and extension thereof by renewal, deferment of action, and otherwise, and the acceptance, release, and substitution of security therefor, and for the purpose of influencing in any way the action of the SBA, and for the purpose of obtaining money, property, and anything of value, under Chapter 14A of Title 15 of the United States Code, to wit, DEMAJ made false statements regarding his criminal history and Altolisi Corp.'s costs of goods sold and gross revenues to the SBA in an EIDL application.

(Title 15, United States Code, Section 645(a);
and Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

7. I am a Special Agent with the FBI. I have been personally involved in the investigation of this matter. I base this affidavit on my participation in this investigation; my conversations with other law enforcement agents and other individuals, including investigators at the Internal Revenue Service (the "IRS"); my examination of reports and records, including records obtained from the SBA, the IRS, and the New York State Department of Labor (the "NYS DOL"), as well as various bank records; and my training and experience. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part.

Overview

8. Based on my review of records obtained from the SBA, bank records, publicly available web pages, and proprietary law enforcement records, I have learned the following:

a. At all times relevant to this Complaint, Luna Pizza was a New York corporation located at a particular address in the Bronx, New York ("Luna Pizza Address-1"), doing business as a pizza restaurant.

b. At all times relevant to this Complaint, MUSA DEMAJ, the defendant, was the president of Luna Pizza.

    c. At all times relevant to this Complaint, Altolisi Corp. was a New York corporation located at a particular address in the Bronx, New York ("Altolisi Address-1"), doing business as a construction and contracting company.

    d. At all times relevant to this Complaint, DEMAJ was the president of Altolisi Corp.

    e. At all times relevant to this Complaint, Luna Cafe Inc. ("Luna Cafe") was a New York corporation, located at a particular address in the Bronx, New York ("Luna Cafe Address-1"), doing business as a restaurant.

    f. At all times relevant to this Complaint, AMIJET KURTISHI, the defendant, was the president of Luna Cafe.

  9. Based on my review of publicly available court documents, I believe that MUSA DEMAJ and AMIJET KURTISHI, the defendants, are husband and wife.

<u>The SBA's EIDL Program</u>

  10. Based on my training and experience, my review of information from the SBA's publicly available website, and my review of records obtained from the SBA, I have learned, among other things, the following concerning the SBA and the EIDL program:

    a. The SBA is a federal agency that administers assistance to American small businesses. That assistance includes issuing certain loans, and guaranteeing loans issued by certain lenders, to qualifying small businesses. As relevant here, this assistance includes making direct loans to applicants through the EIDL program.

    b. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted on or about March 27, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. Among other things, the CARES Act expanded the EIDL program, which provided small businesses with low-interest loans of up to $2 million prior to in or about May 2020, and up to $150,000 between in or about May 2020 and in or about December 2021, in order to provide vital economic support to help overcome the loss of revenue small businesses experienced due to COVID-19. These loans were made directly by the SBA.

    c. To qualify for an EIDL loan under the CARES Act, an applicant had to have suffered "substantial economic injury" from COVID-19, based on an actual economic injury determined by the SBA. An EIDL loan could be used only for certain specified purposes, such as payroll and other similar costs, increased costs due to supply chain interruption, and paying obligations that could not be met due to revenue loss, in addition to other similar uses.

    d. Applications for EIDL loans were submitted through the SBA's website. In an application, the individual seeking a loan on behalf of a business was required to list, among other things: (i) the individual's name, email address, phone number, and address; and (ii) the business's name, email address, phone number, address, number of employees, business category, and gross revenue. The SBA's website recorded the internet protocol ("IP") address from which

4

individuals submitted EIDL loan applications.  Applicants received email notifications at various points in the application process, including, if applicable, when the SBA extended an offer and when the SBA approved the loan.

### The Luna Pizza Fraud

11.     Based on my review of records obtained from the SBA, I have learned, among other things, the following:

      a.     On or about October 2, 2020, an EIDL application was submitted to the SBA on behalf of Luna Pizza (the "Luna Pizza Application").

      b.     The Luna Pizza Application listed MUSA DEMAJ, the defendant, as Luna Pizza's individual owner.

      c.     The Luna Pizza Application also listed, with respect to Luna Pizza's contact information, a particular email address ("Demaj Email Address-1") that, based on records obtained from a particular electronic services provider, I know is subscribed to in the name of DEMAJ, as well as a particular phone number ("Demaj Phone Number-1") that, based on records obtained from a particular cell service provider, I know to be subscribed to in the name of "Eddy Demaj."[1]

      d.     The Luna Pizza Application listed certain of DEMAJ's personal information, including Demaj Email Address-1, a particular residential address in River Vale, New Jersey ("Demaj Home Address-1"),[2] and a social security number and birth date that, based on my review of law enforcement database records and bank records, I know to be DEMAJ's social security number and birth date ("Demaj Social Security Number-1" and "Demaj Date of Birth-1," respectively).

12.     Based on my review of records obtained from the SBA, publicly available court documents, and records obtained from the IRS, I believe that the Luna Pizza Application contained the following materially false statements:

      a.     In completing the Luna Pizza Application, MUSA DEMAJ, the defendant, answered "no" to the following question: "a.  Are you presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? b.  Within the last 5 years, for any felony, have you ever been convicted, plead [sic] guilty, plead nolo contendere, been placed on pretrial diversion, or been placed on any form of parole or probation (including probation before judgement)?"  However, based on my review of

---

[1] Based on my review of publicly available information accessible on a particular social media platform ("Social Media Platform-1"), I believe that MUSA DEMAJ, the defendant, uses a particular Social Media Platform-1 account with the username "musa demaj" and the handle "eddie_loshi."  Accordingly, I believe that "Eddy Demaj" is an alias used by DEMAJ.

[2] Based on my review of records obtained from the New Jersey Department of Motor Vehicles (the "NJ DMV"), I know that Demaj Home Address-1 is listed as DEMAJ's address in NJ DMV records.  Demaj Home Address-1 is also listed as both DEMAJ's address and the address of AMIJET KURTISHI, the defendant, in records obtained from multiple credit reporting agencies.

5

publicly available court documents, I have learned that, on or about September 12, 2017, DEMAJ was convicted in the United States District Court for the Southern District of New York of conspiracy to distribute narcotics in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C), a felony punishable by imprisonment for more than one year.

        b.      The Luna Pizza Application listed Luna Pizza's "Gross Revenues for the Twelve (12) Month Prior to the Date of the Disaster (January 31, 2020)" as $200,787.00 and listed Luna Pizza's "Cost of Goods Sold for the Twelve (12) Month Prior to the Date of the Disaster (January 31, 2020)" as $71,853.00. However, based on my review of records obtained from the IRS, I have learned, among other things, that Luna Pizza reported, in its Form 1120 for the tax year beginning April 18, 2019, and ending December 31, 2019, that its gross revenues for the relevant tax year were $787 and that its costs of goods sold for the relevant tax year were $142.

13.    Based on my review of records obtained from the SBA, I have learned that the Luna Pizza Application directed that the requested loan payment be sent to a particular bank account in the name of Luna Pizza (the "Luna Pizza Account") at a particular bank ("Bank-1").

14.    Based on my review of records obtained from Bank-1, I have learned that MUSA DEMAJ, the defendant, is listed as the authorized signer and the president of Luna Pizza in records associated with the Luna Pizza Account.

15.    Based on my review of records obtained from the SBA, I have learned that, on or about October 8, 2020, the SBA approved the Luna Pizza Application and an EIDL loan to Luna Pizza in the amount of approximately $64,500.

16.    Based on my review of records obtained from the SBA, I have learned that, on or about October 8, 2020, MUSA DEMAJ, the defendant, electronically signed an SBA loan agreement providing for Luna Pizza to receive an EIDL loan in the amount of approximately $64,500 based on the Luna Pizza Application (the "Luna Pizza SBA Loan Agreement").

17.    Based on my review of bank records obtained from Bank-1, I have learned that, on or about October 14, 2020, the Luna Pizza Account received a deposit from the SBA in the amount of approximately $64,400. Just before this deposit, the Luna Pizza Account had a balance of approximately $1,290.76.

18.    Based on my review of the Luna Pizza SBA Loan Agreement, I know that the associated loan proceeds were required to be used "as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount stated above."

19.    Based on the following, I believe that the loan proceeds obtained pursuant to the Luna Pizza SBA Loan Agreement were not used for Luna Pizza's working capital but, rather, that MUSA DEMAJ and AMIJET KURTISHI, the defendants, used the loan proceeds for personal expenses:

        a.      Based on my review of records obtained from Bank-1, I have learned that, on or about October 16, 2020—*i.e.*, just approximately two days after the Luna Pizza Account

6

received the $64,400 deposit from the SBA—approximately $10,000 was withdrawn from the Luna Pizza Account. The associated withdrawal appears to have been signed by DEMAJ.

    b. Based on my review of records obtained from Bank-1, I have learned that, also on or about October 16, 2020, a check in the amount of approximately $30,000, made payable to DEMAJ, was issued from the Luna Pizza Account. Also on or about October 16, 2020, the check was deposited into a different account at Bank-1 held in DEMAJ's name (the "Demaj Account"). Before this deposit, the balance of the Demaj Account was approximately $533.02.

    c. Based on my review of records obtained from Bank-1, I have learned that, approximately two weeks later, on or about October 30, 2020, approximately $18,917 was transferred from the Demaj Account to a particular loan servicing company ("Loan Servicing Company-1"), that, based on my review of records obtained from Loan Servicing Company-1, I know to be servicing a mortgage on the property associated with Demaj Home Address-1.

    d. Based on my review of records obtained from Bank-1, I have learned that, on or about October 20, 2020, November 25, 2020, and December 23, 2020, respectively, three payments each in the amount of approximately $5,000 were made via a particular digital payment platform from the Luna Pizza Account to a particular individual ("Individual-1"). Based on my review of records obtained from the NYS DOL, I believe that Individual-1 is not an employee of Luna Pizza.

<u>The Altolisi Corp. Fraud</u>

 20. Based on my review of records obtained from the SBA, I have learned, among other things, the following:

    a. On or about December 10, 2020, an EIDL application was submitted to the SBA on behalf of Altolisi Corp. (the "Altolisi Application").

    b. The Altolisi Application listed MUSA DEMAJ, the defendant, as Altolisi Corp.'s individual owner.

    c. The Altolisi Application also listed, as Altolisi Corp.'s contact information, Demaj Email Address-1 and Demaj Phone Number-1.

    d. The Altolisi Application also listed certain of DEMAJ's personal information, including Demaj Email Address-1, Demaj Home Address-1, Demaj Social Security Number-1, and Demaj Date of Birth-1.

 21. Based on my review of records obtained from the SBA, publicly available court documents, and records obtained from the IRS, I believe that the Altolisi Application contained the following materially false statement:

    a. In completing the Altolisi Application, MUSA DEMAJ, the defendant, again answered "no" to the following question: "a. Are you presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? b. Within the last 5 years, for any felony, have you ever been convicted, plead

7

[sic] guilty, plead nolo contendere, been placed on pretrial diversion, or been placed on any form of parole or probation (including probation before judgement)?"[3]

22. Based on my review of records obtained from the SBA, I have learned that the Altolisi Application directed that the requested loan payment be sent to a particular bank account in the name of Altolisi Corp. (the "Altolisi Account") at Bank-1.

23. Based on my review of bank records obtained from Bank-1, I have learned that MUSA DEMAJ, the defendant, is listed as the authorized signer and the president of Altolisi Corp. in records associated with the Altolisi Account.

24. Based on my review of bank records obtained from Bank-1, I have learned that the Altolisi Account was opened on or about November 23, 2020—*i.e.*, just approximately seventeen days before the Altolisi Application's submission.

25. Based on my review of records obtained from the SBA, I have learned that, on or about December 30, 2020, the SBA approved the Altolisi Application and an EIDL loan to Altolisi Corp. in the amount of approximately $63,200.

26. Based on my review of records obtained from the SBA, I have learned that, on or about December 30, 2020, MUSA DEMAJ, the defendant, electronically signed an SBA loan agreement providing for Altolisi Corp. to receive an EIDL loan in the amount of approximately $63,200 based on the Altolisi Loan Application (the "Altolisi SBA Loan Agreement").

27. Based on my review of bank records obtained from Bank-1, I have learned that, on or about January 5, 2021, the Altolisi Account received a deposit from the SBA in the amount of approximately $63,100. Just before this deposit, the Altolisi Account had a balance of approximately $285.

28. Based on my review of the Altolisi SBA Loan Agreement, I know that the associated loan proceeds were required to be used "as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount stated above."

29. Based on the following, I believe that the loan proceeds obtained pursuant to the Altolisi SBA Loan Agreement were not used for Altolisi Corp.'s working capital but, rather, that MUSA DEMAJ and AMIJET KURTISHI, the defendants, used the loan proceeds for personal expenses:

---

[3] The Altolisi Application listed Altolisi Corp.'s "Gross Revenues for the Twelve (12) Month Prior to the Date of the Disaster (January 31, 2020)" as $191,220.00 and listed Altolisi Corp.'s "Cost of Goods Sold for the Twelve (12) Month Prior to the Date of the Disaster (January 31, 2020)" as $64,941.00. Based on my review of records obtained from the IRS, I have learned, among other things, that no Form 1120 for the tax year beginning April 18, 2019, and ending December 31, 2019, was filed on behalf of Altolisi Corp.

        a.      Based on my review of bank records obtained from Bank-1, I have learned that, on or about January 7, 2021—*i.e.*, just approximately two days after the Altolisi Account received the approximately $63,100 deposit from the SBA—approximately $25,000 was transferred from the Altolisi Account to a particular online financial technology broker ("Online Broker-1") account held in DEMAJ's name. Based on my review of publicly available web pages and my training and experience, I know that Online Broker-1 is used for, among other things, trading stocks, Exchange-Traded Funds, and cryptocurrency.

        b.      Based on my review of bank records obtained from Bank-1, I have learned that, on or about January 7, 2021, approximately $10,000 was transferred from the Altolisi Account to an electronic trading platform ("Electronic Trading Platform-1") account held in KURTISHI's name. Based on my review of publicly available web pages and my training and experience, I know that Electronic Trading Platform-1 is used for, among other things, trading stocks, Exchange Traded Funds, and cryptocurrency.

        c.      Based on my review of bank records obtained from Bank-1, I have learned that, on or about January 14, 2021, a check in the amount of approximately $15,000, made payable to the cash services component of Bank-1 and with "CREDIT CARD PAYMENT" written in the check's memorandum line, was issued from the Altolisi Account. Also on or about January 14, 2021, a payment totaling approximately $15,000 was made toward the balance of a credit card subscribed to in the name of Musa Demaj.

### The Luna Cafe Fraud

30.      Based on my review of records obtained from the SBA, I have learned, among other things, the following:

        a.      On or about May 14, 2020, an EIDL application was submitted to the SBA on behalf of Luna Cafe (the "Luna Cafe Application").

        b.      The Luna Cafe Application listed AMIJET KURTISHI, the defendant, as Luna Cafe's individual owner.

        c.      The Luna Cafe Application listed a particular email address as both the email address for Luna Cafe and for KURTISHI.

        d.      The Luna Cafe Application listed additional information for KURTISHI, including a social security number and birth date that, based on my review of law enforcement database records, I know to be KURTISHI's social security number and birth date.

31.      Based on my review of records obtained from the SBA, I have learned that the Luna Cafe Application directed that the requested loan payment be sent to a particular bank account in the name of Luna Cafe (the "Luna Cafe Account") at Bank-1.

32.      Based on my review of bank records obtained from Bank-1, I have learned that AMIJET KURTISHI, the defendant, is listed as the authorized signer and the president of Luna Cafe in records associated with the Luna Cafe Account.

33. Based on my review of records obtained from the SBA, I have learned that, on or about July 7, 2020, the SBA approved the Luna Cafe Application and an EIDL loan to Luna Cafe in the amount of approximately $150,000.

34. Based on my review of records obtained from the SBA and my conversations with law enforcement officers, I have learned that, on or about July 6, 2020, AMIJET KURTISHI, the defendant, electronically signed an SBA loan agreement providing for Luna Cafe to receive an EIDL loan in the amount of approximately $150,000 based on the Luna Cafe Application (the "Luna Cafe SBA Loan Agreement").

35. Based on my review of bank records and my conversations with law enforcement officers, I have learned that, on or about July 9, 2020, the Luna Cafe Account received a deposit from the SBA in the amount of approximately $149,900. Before this deposit, the Luna Cafe Account had a balance of approximately $3,544.39.

36. Based on my review of the Luna Cafe SBA Loan Agreement, I know that the loan proceeds were required to be used "as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount stated above."

37. Based on the following, I believe that the loan proceeds obtained pursuant to the Luna Cafe SBA Loan Agreement were not used for Luna Cafe's working capital but, rather, that MUSA DEMAJ and AMIJET KURTISHI, the defendants, used the loan proceeds for personal expenses:

    a. Based on my review of bank records obtained from Bank-1, I have learned that, on or about July 13, 2020—*i.e.*, just approximately four days after the Luna Cafe Account received the approximately $149,900 deposit from the SBA—approximately $40,000 was withdrawn from the Luna Cafe Account. The same day, approximately $40,000 was deposited into the Demaj Account.

    b. Based on my review of bank records obtained from Bank-1, I have learned that, approximately one day later, on or about July 14, 2020, approximately $18,000 was transferred from the Demaj Account to an Electronic Trading Platform-1 account belonging to DEMAJ.

    c. Based on my review of bank records obtained from Bank-1, I have learned that, on or about July 16, 2020, an approximately $2,000 payment was made from the Demaj Account to the financial services component of a car manufacturer.

38. Based on my review of records obtained from the SBA, I have learned that, pursuant to a modification to the Luna Cafe SBA Loan Agreement (the "Luna Cafe SBA Loan Agreement Modification"), on or about December 29, 2021, the SBA authorized Luna Cafe to receive additional EIDL funding in the amount of approximately $350,000 pursuant to the Luna Cafe SBA Agreement. The Luna Cafe SBA Loan Agreement Modification did not modify the Luna Cafe SBA Loan Agreement's requirement that the loan proceeds be used "as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and

continuing thereafter and to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount stated above."

39. Based on my review of bank records obtained from Bank-1, I have learned that, on or about January 4, 2022, the Luna Cafe Account received a deposit from the SBA in the amount of approximately $350,000. Before this deposit, the Luna Cafe Account had a balance of approximately $3,880.01.

40. Based on the following, I believe that the loan proceeds obtained pursuant to the Luna Cafe SBA Loan Agreement Modification were not used for Luna Cafe's working capital but, rather, that MUSA DEMAJ and AMIJET KURTISHI, the defendants, used the loan proceeds for personal expenses:

a. Based on my review of bank records obtained from Bank-1, I have learned that, on or about January 4, 2022, and January 5, 2022—*i.e.*, just days after the approximately $350,000 deposit from the SBA to the Luna Cafe Account—four payments totaling approximately $53,535.67 were made from the Luna Cafe Account toward the balance of credit cards in the name of DEMAJ. In the preceding months, the same credit cards were used to make purchases from food delivery services, designer fashion labels, and online marketplaces.

b. Based on my review of bank records obtained from Bank-1, I have learned that, on or about January 10, 2022, approximately $30,000 was wired from the Luna Cafe Account to an account that bank records indicate is located in the Republic of Kosovo in the name of another individual with the last name "Demaj" ("Individual-2"). Records obtained from Bank-1 indicate that the purpose of this payment was "Family Expenses." Based on my review of records obtained from the NYS DOL, I believe that Individual-2 is not an employee of Luna Cafe.

c. Based on my review of bank records obtained from Bank-1, I have learned that, on or about January 21, 2022, a check in the amount of approximately $38,186, made payable to another individual with the last name "Demaj" ("Individual-3"), was issued from the Luna Cafe Account. Based on my review of records obtained from the NYS DOL, I believe that Individual-3 is not an employee of Luna Cafe.

d. Based on my review of bank records obtained from Bank-1, I have learned that, on or about January 18, 2022, a check in the amount of approximately $20,000, made payable to another individual ("Individual-4"), was issued from the Luna Cafe Account. Based on my review of records obtained from the NYS DOL, I have learned that Individual-4 was last employed by Luna Cafe in or about 2020 and was paid a total amount of approximately $17,578 for work completed from in or about 2018 through in or about 2020.

WHEREFORE, I respectfully request that warrants be issued for the arrest of MUSA DEMAJ and AMIJET KURTISHI, the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

/s/ Nick Sulzer, by SDA with permission
_____
NICK SULZER
Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this 15th day of March, 2024.

_____
THE HONORABLE STEWART D. AARON
United States Magistrate Judge
Southern District of New York